# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| VIRGINIA NODINE, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action |
| v. : | No. 5:09-cv-113 (WLS) |
| : | |
| JOHN E. POTTER, : | |
| : | |
| Defendant. : | |

## REPORT AND RECOMMENDATION

Plaintiff has filed a Motion for Reconsideration (Doc. 38) of the District Court's Order of July 9, 2012, denying Plaintiff's Motion for Appointment of Counsel (Doc. 37). The District Court has referred the Motion for Reconsideration to the undersigned magistrate judge for a Report and Recommendation on Plaintiff's medical and financial capacity to proceed without appointed counsel in the presentation of her claims at trial. Specifically, the Court directed the undersigned to submit "a detailed evaluation of Plaintiff's medical and financial circumstances in view of the nature and status of this case." Order of August 8, 2012 (Doc. 40).

On September 6, 2012, the parties appeared for an evidentiary hearing. Plaintiff appeared *pro se*, and described her financial and medical condition. Plaintiff also responded to questioning from the Court and from Defendant's counsel. Plaintiff's husband testified as well. Defendant did not present any testimony, but submitted certain medical records received in discovery. Following the hearing, the parties were given twenty-one days to file additional documents and seven days to respond to any documents presented by the opposing party. Neither party has presented additional documents, however. The following findings of fact and conclusions of law are based on the

1

evidence presented by the parties at the September 6 hearing and on other information in the record of the case.

## FINDINGS OF FACT

A.  Income and assets

   1.  Plaintiff was employed with the United States Postal Service from 1986 to 2007.

   2.  In 2008, Plaintiff began receiving workers compensation benefits and currently receives benefits in the amount of approximately $3,500 per month. These benefits are not taxed.

   3.  Plaintiff's husband has been employed by the United States Postal Service since 1989. He is currently employed as an electronics technician, and receives a salary of approximately $65,000 per year.

   4.  Plaintiff currently receives Social Security disability benefits in the amount of $1,511 per month; she believes, however, that these payments have been made in error and that she may be obligated to reimburse the Social Security Administration for overpayments. She has reserved approximately $45,000 in a savings account in anticipation of receiving a demand for repayment.

   5.  Plaintiff has a Thrift Savings Program (TSP) account valued at approximately $209,000.

   6.  Plaintiff's husband has a TSP Account valued at approximately $230,000.

   7.  Plaintiff and her husband own a home in the Atlanta area. They are not aware of its current value. The home is subject to a mortgage with a balance of approximately $100,000.

      8.      Plaintiff and her husband own five operable cars: two 2000 Volkswagen Jetta diesels, a 1996 Volkswagen Passat, a 1996 Chevrolet Suburban, and a 1990 Chevrolet Silverado pickup truck. These vehicles are not subject to any debt.

B.      Expenses and liabilities

      1.      The mortgage payment on Plaintiff's home is between $650 and $700 per month.

      2.      Plaintiff's husband pays $284.50 every two weeks to service a loan from his TSP account in the principal amount of $21,671.93.

      3.      Plaintiff's husband expects that in the near future he will require surgery that is not covered by his health insurance plan. He expects the surgery to cost approximately $6,000.

      4.      As noted above, Plaintiff has reserved approximately $45,000 in a savings account in expectation of a demand for repayment from the Social Security Administration.

      5.      Plaintiff and her husband have no dependent children or other dependents.

C.      Plaintiff's medical condition

      1.      In October 2007, Plaintiff's primary care physician, Dr. Craig Underset, diagnosed her with Acute Situational Stress and Anxiety Disorder and stated that she would be unable to work due to her condition. Def.'s Ex. 4 (Doc. 45-4).

      2.      In June 2008, Dr. Underset amended his diagnosis to Post Traumatic Stress Disorder and Anxiety Disorder. Def.'s Ex. 7 (Doc. 45-7).

      3.      Since 2007, Plaintiff has attended psychotherapy sessions with Douglas Aycock, Ph.D., a licensed psychologist. She stated at the hearing that she continues to attend therapy with Dr. Aycock twice a week.

   4.  Plaintiff stated that she also sees a psychiatrist, Dr. Harden, approximately once every three months.

   5.  Plaintiff is currently taking Cymbalta, Xanax, Wellbutrin, and Abilify for her psychiatric condition.

D. Plaintiff's background

   1.  Plaintiff graduated from high school in 1974.

   2.  Plaintiff did not attend college and has no significant post-secondary education.

   3.  Plaintiff worked consistently after graduating high school, until she left the Postal Service in 2007.

   4.  Before beginning her employment with the Postal Service in 1986, Plaintiff worked in a variety of clerical, sales, and customer service positions. Immediately prior to taking a position with the Postal Service, Plaintiff was working as the manager of a dress shop in Atlanta.

   5.  In 1986 Plaintiff began as a sorter with the Postal Service. After an injury in 1994, she was assigned to the injury compensation office.

   6.  In May 2004, Plaintiff applied for a position as an injury compensation specialist in Macon, Georgia. She was not selected for the position.

   7.  After she was not selected for the injury compensation specialist position, Plaintiff filed a claim of discrimination with the Equal Employment Opportunity Commission, alleging discrimination on the basis of her race, color, and physical disability.

8. In March 2006, an administrative law judge determined that Plaintiff was the subject of discrimination on the basis of disability. As a result of this decision, Plaintiff was awarded the injury compensation specialist position in Macon.

9. Plaintiff's duties as injury compensation specialist included processing injury claims for postal employees and advising employees on the claims procedures. Plaintiff had performed the same or similar duties for several years in her position at the injury compensation office in Atlanta, prior to her promotion in 2006.

10. Plaintiff left her employment with the Postal Service on August 7, 2007.

11. Upon leaving the Postal Service, Plaintiff filed a claim for workers compensation benefits based on claims of work-related anxiety and depression. After an initial denial, her claim for benefits was eventually approved, and she has been receiving such benefits since 2008.

12. Upon leaving employment, Plaintiff also filed a claim of discrimination based on disability or prior protected activity. After a hearing, the claim was denied by an administrative law judge on November 21, 2008. After that claim was denied at the administrative level, Plaintiff filed the present lawsuit.

13. Plaintiff was represented in her previous, successful EEOC claim, in her second EEOC claim, and in the present lawsuit, by attorney John Poti. Plaintiff took an active role in the prosecution of her claims.

14. Discovery in the present lawsuit closed on April 28, 2010. No dispositive motions were filed. A pretrial conference was conducted on April 13, 2011. Both parties announced that they were ready for trial, and a complete joint pretrial order was submitted.

15. A second pretrial conference was scheduled for October 31, 2011.

16. On October 11, 2011, Plaintiff's attorney moved to withdraw from the case, noting that he had accepted employment with a private company and was leaving the practice of law. The motion to withdraw was granted and trial of the case was continued until February 2012.

17. Plaintiff paid her attorney fees based on an hourly rate, and estimates that she paid him as much as $32,000 between the initial EEOC claims in 2004 and his withdrawal from this case in 2011.

18. Since her attorney withdrew, Plaintiff has telephoned approximately a dozen lawyers in the Atlanta area and has written letters to at least one lawyer in the Macon area. She has not visited with any lawyers in person, citing her emotional condition. Plaintiff has obtained some help in pursuing her case from a friend who is a paralegal.

## **CONCLUSIONS OF LAW**

The evidence outlined above indicates that Plaintiff has both the financial capacity to retain qualified counsel to represent her and the capacity to proceed *pro se*. In civil cases, litigants have no constitutional right to counsel. Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987). Appointment of counsel in a civil case is a "privilege 'justified only by exceptional circumstances,' such as the presence of 'facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner.'" Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993) (quoting Poole, 819 F.2d at 1028). No such exceptional circumstances exist in this case.

As an initial matter, appointment of counsel should be considered only for litigants who are indigent. The evidence in this case shows that Plaintiff is not indigent and has the resources to retain

counsel even if she is unable to find an attorney willing to take her case on a contingent basis. Plaintiff and her husband have a combined annual income of over $100,000. Plaintiff's portion of that income, approximately $42,000 per year is not subject to taxation because it comes from a worker's compensation award. Plaintiff and her husband have no children or other dependents who rely on their income. Plaintiff and her husband also have retirement savings valued at nearly $440,000, in separate accounts with the federal Thrift Savings Program (TSP). Plaintiff stated that the present value of her personal TSP account was approximately $209,000. Plaintiff's husband testified that he and Plaintiff owned four or five functioning cars. Although none of the cars appeared to have significant value, none of the cars is subject to any outstanding debt.

Plaintiff and her husband stated that they have only two significant debts. The first debt is a mortgage on their home, with a current balance of approximately $100,000. The monthly payment on this mortgage is between $650 and $700. The second debt is a loan in the original amount $21,671.93 taken from Plaintiff's husband's TSP account. Plaintiff's husband deducts $284.50 from each biweekly paycheck to service the loan. He did not state the current balance of the loan.

The evidence shows, therefore, that Plaintiff has substantial income and resources from which to pay an attorney to represent her, and has minimal liabilities that would limit her ability to pay counsel. Discovery was completed in this case and a pretrial order was prepared prior to the withdrawal of Plaintiff's first attorney. Nothing remains except the trial of the case, which the parties have estimated will take approximately three days. Even if Plaintiff is unable to find an attorney willing to take her case on a contingent basis, she is able to pay an attorney on an hourly fee basis or on a retainer to take her case to trial.

The evidence also shows that Plaintiff has the capacity to proceed representing herself if she is unwilling to invest any more of her financial resources into the prosecution of her case. To show

that appointment of counsel is warranted, Plaintiff must demonstrate that this case presents exceptional circumstances. In determining whether a case presents such exceptional circumstances, courts consider a number of factors, including: "(1) the type and complexity of the case; (2) whether the pro se litigant is capable of adequately presenting her case; (3) whether the litigant is in a position to adequately investigate the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination." Collins v. Homestead Correctional Inst., 452 Fed. Appx. 848, 850 (11th Cir. 2011) (citing Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir.1982)).

With regard to the first factor, this case is not unusually complex. Plaintiff raises claims of discriminatory treatment in the workplace. As such, the evidence in this case will primarily consist of testimony from Plaintiff, Plaintiff's supervisor, and Plaintiff's coworkers, related to the conditions in the workplace. There is nothing in the pretrial report prepared by Plaintiff's previous counsel to indicate that there are highly technical matters of law or evidence to be considered in the case.

The evidence presented at the September 6 hearing demonstrates that Plaintiff is capable of adequately presenting her case. She is a high school graduate with a long history of employment in various clerical, managerial, and administrative jobs. Her reported work history demonstrates a well-developed degree of skill in the interpretation and application of complex federal workplace regulations. Plaintiff's litigation history also reflects such skill. She has been in near-constant litigation with the Postal Service since 2004. Prior to bringing the present action, Plaintiff successfully litigated a previous discrimination claim and a workers compensation claim against the Postal Service. The record, along with evidence submitted by the Government, indicates that Plaintiff was actively involved in the pursuit of her claims even while she was represented by counsel. Since the withdrawal of counsel, Plaintiff has prepared a number of documents in support

of her motion for appointment of counsel that reflect her sophistication.  During the September 6 hearing, Plaintiff was articulate and knowledgeable about her claims and the issues in the case.

Plaintiff's psychological consideration should not be a significant hindrance to her ability to prosecute her case.  The record shows that Plaintiff was diagnosed with Post Traumatic Stress Disorder and a generalized Anxiety Disorder consequent to the alleged workplace difficulties in 2007.  The medications that Plaintiff is taking – Cymbalta, Abilify, Wellbutrin, and Xanax – are common psychiatric medications and do not indicate an extreme or acute mental dysfunction.  Plaintiff's appearance at the September 6 hearing was consistent with a finding that her condition is only moderately limiting.  She was composed, organized, and articulate, exhibiting symptoms of anxiety only when attempting to describe her psychiatric condition or to explain her inability to find new counsel. Although Plaintiff's psychiatric condition may present her with some challenges, Plaintiff is capable of overcoming those challenges.

Plaintiff is in a position to investigate her case adequately.  Because discovery was completed before Plaintiff's counsel withdrew, most of the investigation should have been completed.  Defendant's counsel indicated at the September 6 hearing that many documents had been exchanged during discovery, although no depositions were conducted by either party.  Because the issues in this case deal primarily with workplace relationships, Plaintiff herself is a key source of much information and should be capable of understanding the evidence that was produced in discovery.

Given that no dispositive motions were filed and no depositions are in the record, it is difficult to evaluate the degree to which the case will center on conflicting testimony that will require particular skill in the presentation of evidence and in cross-examination.  The nature of the case suggests that much of the trial will revolve around the testimony of Plaintiff against the

9

testimony of her supervisor.  Although presentation of evidence always presents challenges for *pro se* litigants (and for lawyers), there is nothing to indicate that these challenges will be exceptional in this case.

## CONCLUSION

The evidence fails to demonstrate the existence of exceptional circumstances to warrant the appointment of counsel in this civil case.  It is apparent that Plaintiff is not financially eligible for appointed counsel in the first place, given that she has significant income and resources and is able to retain qualified counsel to present this case for trial.  The evidence also indicates that Plaintiff has the capacity to proceed representing herself, if she chooses to do so.

The Court has limited resources to pay for appointment of counsel in civil cases.  Dozens, if not hundreds, of cases are filed in this Court every year by *pro se* litigants, many of whom are incarcerated, destitute, or illiterate.  Appointment of counsel is warranted in only a small fraction of those cases.  It is certainly not warranted in this case, involving a litigant who is prosperous, intelligent, and experienced.  Accordingly, it is hereby **RECOMMENDED** that Plaintiff's motion for reconsideration of the Court's order denying appointment of counsel be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the district judge to whom this case is assigned within fourteen (14) days after being served with a copy thereof.

**SO RECOMMENDED**, this 12th day of October, 2012.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
